### KLAUDER–WELDON DYEING MACH. CO. v. GILES et al.

(District Court, N. D. New York. March 29, 1916.)

1. PATENTS ⟨⟩328—VALIDITY AND INFRINGEMENT—YARN DYEING MACHINE.

The Weldon patent, No. 659,906, for a yarn dyeing machine, discloses invention and is valid, but in view of the prior art is entitled to only a limited range of equivalents. As so limited, it is not infringed by the machine of the Giles patent, No. 1,146,324, which, while also an improvement on the prior art and producing the same result, does so by a different combination of old elements, some of which are neither the elements of the Weldon machine nor their equivalents.

2. PATENTS ⟨⟩22—INFRINGEMENT—"EQUIVALENT" PARTS.

To be equivalents, two elements found in different machines or devices in the same art must not only perform the same function in the respective combinations, but must perform that function in substantially the same manner.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. ⟨⟩ 22.

For other definitions, see Words and Phrases, First and Second Series, Equivalent.]

In Equity. Suit by the Klauder-Weldon Dyeing Machine Company against John H. Giles and the John H. Giles Dyeing Machine Company. On final hearing. Decree for defendants.

See, also, 224 Fed. 515; 228 Fed. 512, —— C. C. A. ——.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This is a suit in equity to restrain alleged infringement of Weldon patent No. 659,906, for improvements in yarn dyeing machines, and for an accounting. Claim 1 is in issue.

Duell, Warfield & Duell, of New York City, for complainant.
A. D. Salinger, of Boston, Mass., for defendants.

RAY, District Judge. The patent in suit, United States letters patent No. 659,906, was issued October 16, 1900, to Leonard Weldon, for improvements in yarn dyeing machines, and is now owned by the complainant.

There was a contest in the Supreme Court of the state of New York over this ownership, which was made by the present defendant; but, beaten in that litigation, it is now contended that the invention and letters patent are worthless. The defendants having devised and constructed a competing machine, with some differences in construction and improved somewhat, but one acting on the same general principles to produce precisely the same result or accomplish the same object, now contend they do not infringe. The plaintiff and its predecessors have been in business in the same plant at Amsterdam, N. Y., for some 30 years, and from early in 1908 to the spring of 1913 the defendant John H. Giles was the vice president and general manager and director of, and a stockholder in, the plaintiff corporation. Some 50 per cent. or more of its business has been in the machines in suit, and about 70 to 75 per cent. of all the dyeing machines in use in the United States has been of the complainant's production. This patent has been acquiesced in by the general public and by the defendant Giles until he severed his connection with the complainant.

Soon after this suit was commenced, on motion of complainant, this court granted a preliminary injunction, its issue and operation being suspended pending appeal, but on appeal the order granting the injunction was reversed. Judge Lacombe, writing the opinion of the Circuit Court of Appeals (Klauder-Weldon Dyeing Mach. Co. v. Giles et al., 228 Fed. 512 — C. C. A. —), held that *on the record presented* infringement was not shown. The complainant contends it has now made and presented a record showing infringement.

[1] The claim in issue of the patent in suit reads as follows:

"1. In a rotary dyeing machine, the combination with the dye tub, of a pair of wheels mounted on a shaft to turn in bearings on the dye tub, an outer and inner circular series of sticks to hold the skeins, the inner series of sticks having bearings for their ends in revoluble adjustable parts, a lever connected with each of the parts to revolve the same, a bolt on the lever, and a rack to engage the bolt secured upon each of the wheels, as set forth."

The complainant contends that all the elements of this claim are present in defendants' device. The defendants claim their device does not have "a lever *connected* with *each of the parts* to revolve the same, a bolt on the lever, and a rack to engage the bolt secured upon each of the wheels, as set forth."

Two large wheels or rings are, at a considerable distance from each other, mounted on a single axle or shaft and revolve with it. In the rim at the periphery of each ring or wheel are sockets which receive

"sticks" or bars of wood extending from the one to the other and these "sticks" hold one end of the skeins of yarn. Movably attached to each of these two large wheels or rings is a smaller ring or wheel provided with sockets which receive other bars of wood or "sticks" extending from the one to the other and receiving the other end of the skein of yarn. There is a tub of dye on which the shaft is mounted in suitable bearings into which the wheels or rings pass as they turn carrying the yarn to be dyed. By suitable appliances and by partially turning these smaller rings or wheels the tension on the skein is varied. In complainant's device this partial turning of these smaller wheels or rings on the larger ones is effected by means of a *lever* "connected with each of the parts to revolve the same, a bolt on the lever, and a rack to engage the bolt secured upon each of the wheels." These large rings or wheels have arms or spokes similar to the ordinary wagon wheel, only a lesser number, and the "lever" shown in the patent in suit is pivoted at its lower end on a bar of wood or iron extending from one spoke or arm to another, and at a distance above its pivoted end is attached to the smaller ring or wheel, so as to move the same when the lever is operated. The rack is a toothed piece of curved iron, the curve corresponding with that of the periphery of the wheel, also attached to the same spokes or arms of the large wheel, but at a considerable distance above the *bar* before mentioned. This lever can be swung or moved on its pivot from and towards each of the two spokes or arms mentioned, and when so moved it of course carries the smaller ring or wheel with it back and forth. If, now, we provide this lever with means for engaging the toothed rack, we have locking means, so that the "sticks" connected with the smaller wheels are held in position. This locking means consists of "a bolt on the lever," which may be moved up and down; that is, into and out of engagement with the rack. Each large wheel has a lever and a rack. Taking into consideration this combination as a whole and the state of the art as it was when this patent was granted, there was disclosed utility and patentable novelty. The main object was to first properly tension the yarn and then maintain proper tension. It was essential, of course, to provide for locking the smaller rings in position. In the dyeing process it is essential that the skeins of yarn on the two sticks be in loose tension and still so taut that the yarn will travel or move on or around the sticks themselves to secure an uniform action of the dye on the entire skein of yarn. The skeins must not be too loose on the sticks, for, if so, they will tangle.

### Infringement.

As stated, the results obtained by the two machines in operation are precisely the same. Each has the dye tub; each has the two large wheels mounted on a single axle or shaft, with a smaller ring or wheel movably attached to each of such wheels. These wheels of defendants' machine have the sticks for the skeins of yarn mounted on or connected with the wheels in substantially the same manner as in the patent in suit. The differences relate to the means for adjusting the one set of sticks relatively to the other set, so as to maintain suitable tension of the skeins of yarn.

As defendants' machine was patented July 13, 1915, it is well to insert here the claims of that patent, to show the differences in construction. Such claims of patent to John H. Giles and Donald M. Giles, No. 1,146,324, are as follows:

"1. A dyeing machine having an inner and an outer set of stick-supporting members and means for simultaneously adjusting the relation of one set with reference to the other, comprising racks carried by the members of one set, an actuating shaft journaled on the other members, pinions on the actuating shaft in engagement with the racks, a worm gear on said shaft, an operating shaft on a member of the latter set, and an operating worm on the operating shaft in operative engagement with the worm gear.

"2. A dyeing machine having an inner and an outer set of annular stick-supporting members, the inner of said members being journaled to move relative to the outer members, racks on the inner members, an actuating shaft carried by the outer members, pinions on the actuating shaft in mesh with the racks, a worm gear on the actuating shaft, a radially arranged operating shaft suitably journaled, and an operating worm on said shaft in engagement with the worm gear to effect simultaneously the adjustment of the inner supporting members relative to the outer supporting members for varying the distances between the sticks.

"3. A dyeing machine having an inner and an outer set of annular stick supporting members, the inner of said members being journaled to move relative to the outer members, racks on the inner members, an actuating shaft carried by the outer members, pinions on the actuating shaft in mesh with the racks, a worm gear on the actuating shaft, a radially arranged operating shaft suitably journaled, and an operating worm on said shaft in engagement with the worm gear to effect simultaneous adjustment of the inner supporting members relative to the outer supporting members, and a squared end portion on the operating shaft for the application of a detachable wrench, substantially as described.

"4. A dyeing machine having an inner and an outer set of stick-supporting members and means for simultaneously adjusting the relation of one set with reference to the other, comprising racks carried by the members of one set, an actuating shaft journaled on the other members, pinions on the actuating shaft in engagement with the racks, a worm gear on said shaft, a radially arranged operating shaft on a member of the latter set, an operating worm on the operating shaft in operative engagement with the worm gear, and a squared end portion on the operating shaft for the engagement therewith of a detachable wrench for manually adjusting the position of the parts."

This is an improvement, I think, on the complainant's machine, and such improvement constitutes patentable invention; but this fact does not defeat infringement, if defendant has complainant's combination operating in substantially the same way to produce the same result, made up of allowable equivalents. Here, of course, comes in the question of the limitations, if any, imposed on complainant by the state of the prior art, as the breadth and scope of complainant's patent must be determined on a consideration of that art.

The defendant's machine has the large wheels carried by the one shaft and the two inner or smaller wheels *movably* mounted on the larger wheels, respectively, and each of these smaller wheels has a rack for engagement with a pinion, the teeth of which act as levers when in engagement with the rack on the small wheels, and when the pinions are turned the small wheels turn. As a necessary consequence, when the pinion is in engagement with the rack and revolved any distance, the relative position of the two sets of sticks is changed and the tension of the skeins of yarn is regulated. There is a lever, there-

fore, for each part—that is, each wheel. There is an actuating shaft carrying these pinions, extending from one large wheel to the other and mounted in suitable bearings at each end on a bar extending from one spoke or "spider arm" to another and attached thereto. Hence the levers (pinions) at each end of this actuating shaft carrying them are supported by and on the large wheel. This actuating shaft, and consequently the pinions, is actuated or moved by the operator at one end of the machine by means of a larger pinion or worm gear mounted on this actuating shaft, and this larger pinion or worm gear is operated or made to turn (thereby operating the smaller pinions or levers and consequently turning the smaller wheels) by means of an "operating worm" engaged with the worm gear mounted on one of the bars supporting one end of the actuating shaft, and which operating worm therefore meshes with this large pinion or worm gear on the actuating shaft. This operating worm has detachable means, a crank handle, for turning or operating it.

It should be mentioned that in defendant's machine the smaller pinions carried by the actuating shaft are always in engagement or in mesh with the racks on the two smaller wheels. The racks on the smaller wheels may be integral with them, respectively, or may be detachable.

The claim in issue of the patent in suit has the following elements in combination: (1) The dye tub (common to both machines). (2) A pair of wheels mounted on a shaft to turn in bearings on the dye tub (common to both machines). (3) An outer and inner circular series of sticks to hold the skeins, the inner series of sticks having bearings for their ends in revoluble adjustable *parts* (common to both machines). (4) A lever connected with each of the *parts* to revolve the same. (5) *A bolt on the lever.* (6) A rack *to engage the bolt* secured upon each of the wheels.

Considering element No. 4, "a lever connected with each of the parts to revolve the same," in complainant's structure, its lever, a straight arm lever pivoted, is connected not only with the large wheel, but with the small wheel for the purpose of moving or revolving it, and there are two levers, one at each large wheel and its companion small wheel. In defendants' structure the pinions mounted on the actuating shaft (not the shaft carrying the large wheels) are levers, and there is one at each of the large wheels and its companion small wheel, and their purpose, or function, is to revolve the small wheels on the large wheel. Here is identity of purpose, and operation and result, but a difference in the form of the levers. The one is a straight arm pivoted lever and the other is a pinion mounted on an actuating shaft, but the one is clearly the equivalent of the other. The complainant's patent shows the straight arm pivoted lever, but the claim is not limited in this respect. Any mechanical dictionary shows that a pinion is a lever.

Considering element No. 5, "a bolt on the lever," in complainant's patent, the object or function of this bolt is to engage and lock the lever with the rack, and is so constructed as to permit disengagement and unlocking except at the will of the operator. In defendants' ma-

chine the levers are always engaged with the racks respectively. There is no bolt on the lever, unless the "operating worm" attached to the large wheel and meshing with the "worm gear," forming a part of the actuating shaft which carries the levers (pinions), can be considered as such "bolt"; that is, is the well-known equivalent of "a bolt on the lever," as understood by a reference to the drawings and specifications of the patent in suit. The result accomplished is the same, but can it be said such result is obtained in substantially the same way or by substantially the same means operating in substantially the same way or in obedience to the same mechanical laws? In defendants' machine the rack is transferred to the small wheel itself where it engages with the teeth of the pinion on the actuating shaft.

Considering element No. 6, "a rack to engage the bolt secured upon each of the wheels," we find in defendants' machine "a rack" surely. There is a rack on each of the smaller wheels; made integral with it, as shown in the model, not in the patent; but this is immaterial, as it is adding a rack to the wheel of the patent in suit, whether made separate and attached or integral. The location of the rack is changed from the large to the small wheel. The complainant contends, however, that neither of these racks shown with which the pinions mesh is the rack of the claim, but that the rack is the "operating worm" *e* of the large drawing in evidence and which operates as a locking device when at rest, and is not the "worm gear" of defendants' patent. But, if the "operating worm" *e* is the rack of the infringing machine, it seems to be quite different from the rack of the patent in suit and hardly an equivalent. It is not secured upon each of the wheels, except quite indirectly, and how does it engage the bolt? What is the bolt? Complainant says it is the "worm gear" (*81* of the drawing), and which is carried by or forms a part of the "actuating shaft," and meshes or engages with such operating worm. Mr. Hammer said:

"Q. 118. Now in this question please recognize that the parts referred to are the inner wheels of the dyeing machine; that is, the revoluble parts. Now, if it be assumed that 'Weldon's contribution to the art is a lever connected with each of the parts to revolve the same, a bolt on the lever, and a rack to engage the bolt secured upon each of the wheels, as set forth,' please state to what extent, if any, you find that contribution present in defendants' machine disclosed in the drawing marked defendants' machine? A. Those features are present in that machine, both as matter of fact and as matter of language. For example, the language quoted calls for a lever connected with each of the parts to revolve the same, those parts being the revoluble rings *E*, and it will be seen that each of those rings, revoluble rings, has in connection with it a gear wheel *H* mounted upon its axle *80*. That is a lever. That is true of each of them—each of those wheels *E* has its own gear wheel *H* and its own axle. The fact is that the axle is common to both of them, but that does not remove the construction from the actual text of the language that each of these revoluble parts shall have a lever to revolve the same. If you did not have the lever, you could not revolve the parts. Such language also calls for a bolt on the lever. That bolt is the tooth *d* of the worm gear *81*, which co-operates with the rack of the worm. The language calls for a bolt on the lever. That is the bolt *d* mounted upon the axle *80*, which is the axle of the lever.

"By the Court: Q. 119. Which is the bolt? A. The bolt is to be considered the tooth which happens to be in engagement with the rack or worm when that worm is still, because it is that bolt, that projection, which goes down into

the teeth of the rack or worm, which prevents movement and locks the lever in place. That language calls for a bolt on the lever, and that bolt *d*, as indicated by this drawing in the upper right-hand corner of the large diagram, shows that that bolt is mounted on the shaft *80* of the lever.

"Q. 120. Which is the bolt on the lever here? A. In this model of the specific structure of the patent in suit the bolt is the small right angle member which is made to project down in between the teeth of the rack.

"Q. 121. The bolt is the means used to lock in the rack? A. That is true. * * *

"Q. 123. Because that part of the worm engages with the tooth? A. To prevent movement, and inasmuch as that bolt is mounted on the shaft *80*, it is mounted on the lever, because the shaft *80* is a part of the lever. The shaft *80* is the axle of the gear wheel *H* of either the right-hand or left-hand small revoluble ring, and by reason of its locking function it prevents those gear wheels from turning, and it prevents the small rings, *E*, from turning when things have been adjusted to their working position. Now we can go on with that quotation just a little further. It calls for a rack to engage the bolt secured upon each of the wheels as set forth. It will be seen in accordance with my explanation that the bolt *d*, which is one of the teeth of the gear wheel *81*, engages with the rack surface of the worm *86*, so that we have there a rack to engage that bolt, and that rack, which is the worm *86*, is secured here—it is secured upon bearings attached to the right-hand big wheel. When you turn that worm you operate the right-hand small ring *E* with respect to the right-hand wheel. You do more than that. You revolve the left-hand wheel *E* with reference to the left-hand big wheel. The left-hand big wheel and the right-hand big wheel are on the same axis. They are on the same shaft; they are connected together. What you put on one you put on the other, of necessity. It is part and parcel of the same structure, so that if you have a rack secured to the right-hand wheel, you have a rack secured to the left-hand wheel. If you cut that ring directly in half you could not work the left-hand mechanism—you could only work the right-hand mechanism; but by reason of the fact that they are brought together and tied together by being put on a common shaft, what you fasten to one you fasten to the other, so that it has a rack. It happens to be the same rack, but each has a rack nevertheless."

I think it is going far to undertake to transform this "operating worm" into the rack of the patent in suit and the "worm gear" into the bolt of that patent. It seems to me difficult to apply the doctrine of equivalents to structures which differ so radically as do the machine of the complainant and that of defendants in this respect. In complainant's machine the operator, if there be but one, changes one end of the sticks supported by the small wheels, and then goes to the other end or side of the machine and changes or adjusts that end, while in defendants' machine both ends, by turning the "operating worm," are adjusted simultaneously. It requires but one operator to do this, and thus time and travel are saved. If the operating worm be the rack and the worm gear be the bolt of the patent in suit, or the allowable equivalents therefor, then infringement may be conceded.

[2] But equivalency is made up of more than one element. To be equivalents the two elements found in different machines or devices in the same art must not only perform the same function in the respective combinations, but perform that function in substantially the same manner. Walker on Patents (4th Ed.) 312, §§ 354, 355. Here Weldon was not a pioneer in this art, and therefore the complainant is entitled, in view of the prior art as it was when the patent was issued, which was not meager, to a somewhat narrow range of equivalents. I think

the language of complainant's patent in suit, in view of that prior art and its disclosures, and in the light of which we must construe it, forbids the adoption of the contention made by Mr. Hammer, which would be quite convincing in the case of a pioneer patent.

The additions made by Giles do not avoid infringement, nor do changes in form or the substitution of *allowable* equivalents in each and every element, even if the machine be vastly improved thereby. The grant of the Giles *patent* has little bearing on the questions involved here, as it is an improvement, as has been pointed out, and probably the patentees were entitled to the patent for the improvement.

If it be true that the operating worm of defendants' structure is the rack, and the worm gear the bolt, and the allowable equivalents of the rack and bolt of the patent in suit, then we find but *one* rack and *one* bolt in defendants' machine, instead of the *two* racks and the *two* bolts shown and described in and called for by the patent in suit. In the patent in suit, if we remove the rack and bolt from either set of wheels (a set being the large wheel and the small wheel attached to it), the machine becomes inoperative. When you operate the bolt and rack at one set of wheels, you do not affect those at the other. Hence the defendants' machine has eliminated one rack and one bolt, accepting the definitions of parts given by Hammer as correct, and an element essential to the operation of complainant's machine is wanting in defendants' machine, as the plaintiff's patent shows, plainly describes, and I think calls for a lever, a rack, and a bolt, all co-operating, at each set of wheels. In complainant's machine the bolt is in engagement, and in locked engagement, with the rack, except when it is desired to move the small wheel. Then by hand the bolt is lifted out of engagement, and the lever arm, carrying the bolt to which it is attached, is pushed by hand in the direction and for the distance desired, and then the bolt by hand or a spring attached thereto is dropped again into engagement with the rack. This construction and these parts, lever, rack, and bolt, are found and must be found at each pair of wheels, or the machine is inoperative as already stated. In defendants' machine, conceding the operating worm to be the rack, and the worm gear to be the bolt, the one is *always* in engagement with the other, and in operative and operating engagement when the operating worm is turned or revolved. As the operating worm is in engagement with the worm gear, or so-called bolt (so called because it has teeth engaged with the worm, or so-called rack) by friction it holds, except as against force applied, the actuating shaft, and consequently the pinions thereon and the small wheels connected therewith, by means of their teeth or racks which are in engagement with the pinions. Apply initial force to the operating worm (rack) by turning it, and this force is communicated to the worm gear (bolt) and turns it, thereby overcoming the holding power of such bolt, and thence to the two pinions on the actuating shaft, causing them to revolve, and thence by the leverage of such revolving pinions to the smaller wheels, causing them to revolve the required distance. This actuating shaft, carrying the pinions and the worm gear integral with it, is in fact one ele-

ment in the defendants' combination, and may properly be described as an actuating shaft provided with two pinions and a worm gear to connect or engage with an operating worm and with the small rings or wheels. We cannot cut this actuating shaft into two parts, or leave off either pinion. If we do, the machine is inoperative. In the combination of an operating worm and a worm wheel or gear, movement of the operating worm is automatically prevented when force is applied to the worm gear; but movement is very easy when force is applied to the operating worm. It is therefore true that, if the operating worm is left alone, the whole structure carried by the main shaft carrying the large wheels is locked against movement. If complainant's theory is correct, then the operating worm must be also the main lever, *the* lever, for by its tooth connection with the worm gear lifting force is applied to the latter, and thus the operating shaft is turned and the two pinions with it simultaneously, and by means of their toothed connection with the smaller wheels, respectively, the same lifting force first applied to the operating worm is applied or transmitted to them, and they are moved to the desired position by the leverage of the pinions. In complainant's machine or structure the force is applied directly to 'the long arm of the lever, after lifting the bolt, and communicated directly to the small wheel, with which the lever is directly connected.

In the prior Weldon patent, No. 566,258, of August 18, 1896, we have the main rotatable shaft carrying the two large wheels (spiders), which carry one set of "sticks" and also the two smaller wheels (rings), one at each wheel, and which smaller rings carry the inner dye sticks. These small wheels or rings are rotatable on the large wheels, respectively, and on the outer edge each is provided with teeth, which engage or "mesh" with the teeth of a small "cogwheel" carried by a cage attached to one arm of the spider (large wheel), which cage also carries a spring catch (or bolt) to engage with this cogwheel. When this spring catch is lifted out of engagement with the cogwheel, the latter is turned or rotated by means of a key inserted therein, and by means of the tooth engagement of the cogwheel with the teeth on the small wheel or ring the latter is rotated. If the cage and spring catch had been dispensed with, except at the operating end, the cogwheels mounted on an operating shaft journaled to the large wheels, so as to engage with the teeth on the small wheels, both of these wheels might have been rotated simultaneously by the operator, located at one end or side of the machine, by means of a key inserted in one of such cogwheels. This in substance is what Giles did, except that he substituted the operating worm and the worm gear for a key as a means for moving the cogwheels and locking the mechanism, and he located the teeth on the inside instead of the outside of the rims to the small wheels, so as to get this operating shaft carrying the pinions (cogwheels) away from the yarn. Giles improved on this former Weldon patent. That patent also shows a worm gear and an operating worm, but for another purpose. Giles was familiar with both these prior patents, and from them probably got his ideas or patentable conception. I do not find it necessary to discuss the prior Berger patent. Here is what Weldon says in his specifications of the invention claimed here:

"To provide means for increasing or decreasing the distance between the sticks that carry the skeins, to accommodate skeins varying in length or to tighten the skeins after they are placed in position upon the sticks, I place the bearings for the inner circular series of sticks upon rings $E$ $E$, loosely journaled in the arms of the large wheels $C$ $C$, or spiders, or on wheels loosely journaled on the spider shaft, and provide means to move or rotate these rings or wheels, and thus rotate all the bearings at once on each ring toward or from their outer mates or sticks $D$. Said adjustable rings are held loosely in place by small angular pieces $b$ $b$, etc., secured upon the inner faces of the arms of the large wheels. A lever $H$ is pivoted upon a bar $h$, extending between two spokes on each large wheel, and is provided with a small slot $l$ to receive a pin $l'$. Near and upon the outer end of said lever is a spring bolt $d$, which is adapted to engage a curved rack $e$ on a bar $f$, also secured to and connecting the two spokes together. When it is desired to revolve one of the rings in either direction, it is only necessary to raise the bolt $d$ and turn the lever $H$ on its pivot to one side or the other, and release the bolt, to engage the rack and to hold the lever and ring in the required position."

It is clear, I think, that Giles made a new combination of old elements, and that, while he produces the same result as does complainant, he does not have the same combination of elements, or a combination made up in part of equivalents differently located, or elements changed in form and construction merely. There is not sufficient identity in the performance of their functions between the elements of the two machines. I am constrained to the conclusion that defendants do not infringe. I have considered the case on the record now made, entirely independent of the conclusions reached on the former record by the Circuit Court of Appeals. There are equities in the case which create a desire to reach a different conclusion, but I am unable to do so.

There will be a decree dismissing the bill of complaint, with costs.